Perry Wayne **REYNOLDS**, on behalf of himself and all others similarly situated

v.

Dr. Robert **SHELDON**, Superintendent, Rusk State Hospital.

**Civ. A. No. 3–74–91B.**

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 14, 1975.

---

Professor Neil H. Cogan, Professor Walter W. Steele, Jr., Dallas, Tex., for petitioner.

John L. Hill, Atty. Gen. for the State of Texas, Sp. Asst. Atty. Gen. Elizabeth Levatino, Austin, Tex., for respondent.

Before GOLDBERG, Circuit Judge, and HUGHES and MAHON, District Judges.

## OPINION

MAHON, District Judge.

This action came originally to be heard by this three-judge court in *Reynolds v. Neill*, 381 F.Supp. 1374 (N.D. Tex.1974). The factual background of the action is fully set out in that opinion and need not be repeated here in detail.

Briefly, Perry Wayne Reynolds was indicted by a grand jury in Dallas County on the charge of murder with malice on March 29, 1968. In May of that year, Reynolds entered an affidavit alleging insanity at the time of the commission of the offense, and further stated that he was insane at the time of trial. The affidavit was accompanied by a motion to try the issue of Reynolds' sanity prior to the trial on the merits. With the approval of the State's attorney this was done, and the jury found that the defendant was both insane at the time the criminal act was committed, and that he was insane at the time of trial. The jury recommended his commitment to a mental hospital until he became sane.

Since that time, Reynolds has been confined at Rusk State Mental Hospital, the only place in the state of Texas where persons acquitted of crimes are placed upon determination of present mental insanity. It is stated by Petitioner, and not disputed by Respondent, that Reynolds has little chance of making substantial progress in reaching a level of sanity as prescribed by the jury to be the condition for his release.

At issue in this case are the standards set out under old article 46.02 of the Texas Code of Criminal Procedure.[1] This statute provided for a procedure by which a defendant in a criminal case could have his present sanity tried either in advance of a trial on the merits, or during such trial. The defense in bar of insanity at the time of offense could also be tried under this statute. Petitioner represents the class of the "insane-insane"—that is, those who had been found insane both at the time of trial and at the time of the offense under old article 46.02.

In our original determination of this action, Petitioner attacked the constitutionality of the standards for commitment, treatment, and release under old article 46.02. Petitioner challenged the constitutionality of these provisions, both for lack of due process and lack of equal protection, comparing criminal commitment under old article 46.02 with civil commitment under article 5547–1 et seq. of the Texas Mental Health Code.[2] We held with Petitioner that the provisions of old article 46.02 denied him equal protection of law insofar as treatment and release were concerned, but held that the provisions relating to commitment were constitutionally valid and withstood attack on both due process and equal protection grounds. In holding that the release procedures of old article 46.02 denied Petitioner equal protection, we did not reach a consideration of the standard for release, since it was identical with the standard for release from civil commitment. Nor did we detail in our opinion our consideration of the standard for commitment and release as it relates to due process of law.

While our prior decision was on appeal to the Supreme Court, two signifi-

1. Relevant portions of Tex.Code Crim.Proc. art. 46.02 (Supp.1974), as it read at the time of our original hearing, are set out in Appendix 1 to this opinion.

2. Relevant portions of Tex.Mental Health Code art. 5547–1 et seq. (1958), as it read at the time of our original hearing, are set out in Appendix 2 to this opinion.

cant legal developments occurred: the Supreme Court decided *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), and the Texas Legislature substantially amended old article 46.02 of the Texas Code of Criminal Procedure [3] and article 5547-1 et seq. of the Texas Mental Health Code [4] to conform with our prior decision.

The Supreme Court, evidently unaware of the Texas Legislature's amendments to the old statutes,[5] subsequently vacated and remanded our earlier decision "for further consideration in light of *O'Connor v. Donaldson*." [6] This is the present stance of the case.

## I.

### THE ISSUES BEFORE THE COURT ON REMAND

Petitioner requests the Court on remand: (1) to declare the commitment and release standards of old article 46.02 unconstitutional; (2) to enjoin Respondent State of Texas from committing or releasing the class pursuant to old article 46.02 or any statute containing the "welfare and protection" standard of old article 46.02; and (3) to continue this Court's injunction of August 28, 1974, against the treatment and release standards of old article 46.02.

Since *O'Connor v. Donaldson* dealt only with the due process rights of an individual confined by the state, no equal protection arguments are considered on remand. Similarly, it is agreed that the constitutionality of the new Texas statutes is not in issue.

Under new articles 46.02 and 46.03 of the Texas Code of Criminal Procedure,

Petitioner's class has ceased to grow. Under the new articles, a defendant will no longer be found both insane at the time of trial and insane at time of commission of the crime. Instead, a defendant will first receive a hearing to see if he is competent to stand trial. If he is found incompetent to stand trial and there is found no substantial probability that he will become competent in the foreseeable future, the defendant is transferred to the appropriate court for civil commitment proceedings. If the criminal court finds that there is a substantial probability that the defendant will become competent to stand trial in the foreseeable future, the defendant is held for at most one year, by which time if he does not become competent, he is transferred for civil commitment. If a defendant is found competent to stand trial, and at the criminal trial is found not guilty by reason of insanity at the time of the offense, and it appears to the court that the defendant requires observation or treatment for his own welfare and protection or the protection of others, the criminal court may transfer the defendant to the appropriate court for civil commitment proceedings. All commitment proceedings are carried out under the same civil procedure.

Nevertheless, at present there are still a substantial number in Petitioner's class, the "insane-insane" committed under old article 46.02.[7] Petitioner argues that since there is no provision for his class in the new statutes, they will continue to be treated and released under the old statutes. Respondent argues that there is no provision in the new statutes excluding Petitioner's class, and as the old statutes are no longer in

---

3. Relevant portions of Tex.Session Law Service, Tex.Laws 1975, ch. 415, at 1095, revising old article 46.02 of the Texas Code of Criminal Procedure, are set out in Appendix 3 to this opinion.

4. Relevant portions of Tex.Session Law Service, Tex.Laws 1975, ch. 416, at 1103, amending article 5547-1 et seq. of the Texas Mental Health Code, are set out in Appendix 4 to this opinion.

5. Argument of Ms. Levatino, counsel for Respondent State of Texas, at oral argument on October 10, 1975.

6. *Sheldon v. Reynolds*, 422 U.S. 1050, 95 S. Ct. 2671, 45 L.Ed.2d 703 (1975).

.7. Respondent estimates the number at eighty-five persons. Argument of Ms. Levatino, counsel for Respondent State of Texas, at oral argument on October 10, 1975.

force, they must be treated under the new statutes. In any event, Petitioner's class was originally committed under old article 46.02, and Petitioner now asks this Court to reconsider its previous decision and, in light of *O'Connor v. Donaldson*, hold the commitment procedure of old article 46.02 unconstitutional as violative of the due process guarantees of the Constitution.

It should be noted here, that even though the question of the constitutionality of the new Texas statutes is not now before this Court, our decision will necessarily affect the new legislation, since it adopted the "welfare and protection" test used by the old statutes.

## II.

### THE STANDARD FOR CONFINEMENT

Petitioner claims that the procedure under old article 46.02 of the Texas Code of Criminal Procedure is unconstitutional in requiring a determination that the defendant needed "hospitalization in a mental hospital for his own welfare and protection or the protection of others," instead of the determination Petitioner claims is required by *O'Connor v. Donaldson*, that the defendant is "dangerous either to himself or to others."

*O'Connor v. Donaldson* was a suit for damages in which the Supreme Court approved the following jury instructions given by the district court:

> Now the purpose of involuntary hospitalization is treatment and not mere custodial care or punishment if a patient is not a danger to himself or others. Without such treatment there is no justification from a constitutional standpoint for continued confinement unless you should also find that [Donaldson] was dangerous either to himself or others.

*Id.* 422 at 570, 95 S.Ct. at 2491, 45 L. Ed.2d at 404.

In discussing the ability of the state to confine a person against his will, the Court held that a finding of "mental illness" is not enough, that a person afflicted with mental illness may still prefer his home to an institution, and that mere public animosity or intolerance could not justify deprivation of a person's liberty.

No place in *O'Connor v. Donaldson* does the Supreme Court adopt the term "dangerous either to himself or to others." Indeed, it would appear that the Supreme Court preferred to limit the application of the term "dangerous" to only those situations involving danger to the public. In referring to the district court's instructions, the Supreme Court noted:

> The judge's instructions used the phrase "dangerous to himself." Of course, even if there is no foreseeable risk of self-injury or suicide, a person is literally "dangerous to himself" if for physical or other reasons he is helpless to avoid the hazards of freedom either through his own efforts or with the aid of willing family members or friends. While it might be argued that the judge's instructions could have been more detailed on this point, O'Connor raised no objection to them, presumably because the evidence clearly showed that Donaldson was not "dangerous to himself" however broadly that phrase might be defined.

*Id.* at 574 n. 9, 95 S.Ct. at 2493 n. 9, 45 L.Ed.2d at 406 n. 9.

And in summarizing its discussion of the constitutional limitations on a state to involuntarily institutionalize the mentally ill, the Court used the term dangerous only in referring to public dangerousness.

> In short, a State cannot constitutionally confine without more a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends.

*Id.,* at 576, 95 S.Ct. at 2494, 45 L.Ed.2d at 407.

Hence, the Court's test as to continued confinement is (1) whether the indi-

vidual is dangerous to the public, or (2) whether that individual is capable of surviving safely in freedom by himself or with the help of willing and responsible family members and friends. Old article 46.02 of the Texas Code of Criminal Procedure, on the other hand, considered, in reverse order, whether the defendant needed hospitalization (1) for the protection of others or (2) for his own welfare and protection.

Without going into dictionary definitions, it is apparent that the two tests are substantially similar.

Petitioner's pleadings and oral argument imply that the Supreme Court intended the term "dangerous" to be limited to "physically dangerous." This is not the case. *See id.*, at 574 n. 9, 95 S. Ct. at 2493 n.9, 45 L.Ed.2d at 406 n.9 (quoted, *supra*). *See also Jackson v. Indiana*, 406 U.S. 715, 731–732, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1971) and *Greenwood v. United States*, 350 U.S. 366, 373–374, 76 S.Ct. 410, 100 L.Ed. 412 (1956), *approving* 18 U.S.C. § 4247 (1970), which permits commitment of convicted criminals if the prisoner "will probably endanger the safety of the officers, the property, or other interests of the United States . . . ." While it is not now necessary for us to determine the exact scope of "dangerous to others," it is clear that a mental illness that creates a propensity to commit criminal acts constitutes a danger to others. Taken in the context of old article 46.02, the proper interpretation of "protection" is "protection from danger," which makes the terms "protection" and "dangerous" co-extensive.

Petitioner argues that the terms "protection" and "welfare and protection" are broader than the test laid down by the Supreme Court in *O'Connor v. Donaldson*—that is, that they allow the State of Texas to involuntarily confine individuals for reasons other than those properly before a court considering the confinement of the mentally ill, and thus violate those individuals' right to due process of law. The Court in *O'Connor*

*v. Donaldson* seems to have defined "surviving safely in freedom" as "avoiding the hazards of freedom." By this definition, it appears the Court did not intend to limit "surviving safely" to purely physical hazards. Yet the Court admonished that the mentally ill could not be confined simply for their own convenience—that they might still prefer their homes to the comfort of an institution. Hence, if any, only the most serious non-physical hazards of freedom which an individual is incapable of avoiding would justify confining that individual involuntarily.

We hold that the "for his own welfare and protection or the protection of others" standard of old article 46.02 is not in itself broader than the Supreme Court's due process standard in *O'Connor v. Donaldson*. As we have previously discussed, a proper reading of "protection" in the context of old article 46.02 is coextensive with "dangerous." Similarly, the "welfare and protection" standard of old article 46.02 is not so overbroad as to violate due process. "Welfare and protection," in the context of old article 46.02 cannot be read as condoning confinement for "mere public intolerance or animosity." Nor does the standard of old article 46.02, by itself, read in context, condone involuntary confinement of an individual merely for care and assistance where there is no danger of physical nor serious non-physical consequences to the individual if he were not confined. Admittedly, the "welfare and protection" standard is slightly ambiguous on this point. But it is no more open to misinterpretation than is a "dangerous to himself," "surviving safely in freedom," or "avoiding the hazards of freedom" test. The Supreme Court has implicitly approved even broader statutes. *Jackson v. Indiana*, 406 U.S. 715, 722, 92 S.Ct. 1845, 1850, 32 L.Ed.2d 435 (1971) (Indiana statute providing for commitment where the individual "requires care, treatment, training or detention in the interest of the welfare of such person or the wel-

fare of others"); *Humphrey v. Cady*, 405 U.S. 504, 509 n.4, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1971) (Wisconsin statute permitting commitment where "a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community").

■ This ambiguity points up a significant problem in this case. Due process considerations are not normally reduced to quibbling over semantics. Rather, in the face of a statute only slightly ambiguous, it is incumbent on the plaintiff to demonstrate that the statute has been applied unconstitutionally in his particular case. In a class action such as this, Petitioner needs to show a systematic application of old article 46.02 in an unconstitutional manner. No proof whatsoever has been offered.

At oral argument, counsel for Petitioner indicated that he was not attempting to prove that the standard was unconstitutional as applied, but rather that the standard was unconstitutional in itself. Hence, even if under their particular circumstances Petitioner's class were committed constitutionally, if their commitment were under an unconstitutional statute, they would have to be released.[8] Petitioner asserts that old article 46.02 must be unconstitutional, relying principally on the legislative history of the "welfare" standard, derived originally from the *Draft Act Governing Hospitalization of the Mentally Ill.*

Indeed, at first blush article 5547–2 of the Texas Mental Health Code, on which Petitioner relies heavily, seems to smack of unconstitutionally impermissible purposes for involuntary confinement of the mentally ill.

It is the purpose of this Code to provide humane care and treatment for the mentally ill and to facilitate their hospitalization, enabling them to obtain needed care, treatment and re-habilitation with the least possible trouble, expense and embarrassment to themselves and their families and to eliminate so far as possible the traumatic effect on the patient's mental health of public trial and criminal-like procedures, and at the same time to protect the rights and liberty of every one. In providing care and treatment for the mentally ill, the State acts to protect the community from harm and to serve the public interest by removing the social and economic burden of the mentally ill on society and the burden and disturbing effect of the mentally ill person on the family, and by care and treatment in a mental hospital to restore him to a useful life and place in society. It is also the legislative purpose that Texas contribute its share to the nation-wide effort through care, treatment and research to reduce the prevalence of mental illness.

There are, however, several reasons for discounting article 5547–2's effect on the "welfare and protection" standard of old article 46.02. First, the Texas Mental Health Code provides for both voluntary and involuntary confinement. The purpose of the legislature in minimizing trouble, expense, embarrassment, trauma, and social burden may well be aimed at the voluntary, not the involuntary confinement procedures. In support of this is the explicitly enunciated purpose in article 5547–2 of protecting the rights and liberty of every one. Secondly, and in further support of the first distinction, is the fact that the Texas Code of Criminal Procedure is distinct from the Texas Mental Health Code. Even if the "protection and welfare" standard of old article 46.02 of the Texas Code of Criminal Procedure was borrowed from the Mental Health Code, it would be improper to look at the purposes for the Mental Health Code in interpreting the standard. Old article 46.-02 provided for an entirely different

---

8. Argument on rebuttal of Mr. Cogan, counsel for Petitioner Perry Wayne Reynolds, at oral argument on October 10, 1975.

procedure for confinement under entirely different circumstances than did the Mental Health Code. Finally, old article 46.02 required a jury verdict on whether an individual needed confinement under the "welfare and protection" standard. If no instructions were given the jury in connection with article 5547-2, then the "welfare and protection" standard would be effectively divorced from any possible taint of unconstitutionality that article 5547-2 might contain. The record is entirely void of any testimony, affidavits, or case records which could enlighten this Court on jury verdicts under old article 46.02. Petitioner asks the Court to make an inference that it is unwilling on this record to make. In the only previous federal court case to consider the constitutionality of old article 46.02, the court implied that old article 46.02 required a finding that the individual was a danger to himself or to others. *Eidinoff v. Connolly*, 281 F.Supp. 191, 194 (N.D.Tex.1968).

In short, Petitioner asks this Court to construe a statute that is similar to statutes approved by the Supreme Court and that is at most only slightly ambiguous, as being unconstitutional, based on a legislative history that is not visible in the statute itself, and on no proof at all as to unconstitutional application of the statute. This the Court cannot do. It should be noted, however, that since the Court is forced by lack of proof in this suit to consider the constitutionality of old article 46.02 on a theoretical level only, this decision will not operate as *res judicata* on an application for habeas corpus by Petitioner or any member of his class who can prove that old article 46.02 was applied unconstitutionally in his particular case.

### III.
### COMMITMENT

The commitment standard of old article 46.02 was the "his own welfare and protection or the protection of others" standard discussed at length in Part II of this opinion. Beyond that discussion there are additional reasons for holding the commitment of Petitioner's class under old article 46.02 constitutional.

■ The Supreme Court's decision in *O'Connor v. Donaldson* explicitly avoided the question of due process requirements in regard to involuntary commitment of mentally ill persons.[9] It is apparent from this avoidance, Chief Justice Burger's concurring opinion in *O'Connor v. Donaldson,* and earlier cases by the Supreme Court on the subject, *e.g., Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1971); *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1971), that the standard for initial commitment can be broader than the standard required for continued confinement. While commitment must be aimed at the same justifiable interests as are recognized constitutional for continued confinement, the State may well have valid interests in promulgating a broader initial commitment standard. This distinction can be explained in part by the current state of the science of psychology. At time of commitment, without a chance for thorough observation, it is often impossible to determine whether a mentally ill individual is dangerous or in need of welfare and protection. After doctors have had a chance to observe and work with the individual, however, a determination of the individual's dangerousness and need can be made which, though still inexact, represents the best determination of the matter that can be made. At that time, a strict determination of the individual's need for hospitalization for his own protection and welfare or for the protection of others has to be made.

More directly in point, old article 46.02 allowed every defendant to raise the issue of his own insanity as a defense to

9. "We need not decide whether, when, or by what procedures, a mentally ill person may be confined by the State on any of the grounds which, under contemporary statutes, are generally advanced to justify involuntary confinement of such a person—to prevent injury to the public, to ensure his own survival or safety, or to alleviate or cure his illness." *O'Connor v. Donaldson, supra,* 422 at 573, 95 S.Ct. at 2493, 45 L.Ed.2d at 406.

criminal charges pending against him. The State would have a legitimate interest in allowing a broader initial commitment standard where the individual himself raised the question of his need for hospitalization, than where it was raised by some third party. Additionally, in reference to a constitutional application of the standard to Petitioner's class, since each individual had been found innocent of a criminal offense on the grounds of insanity, it would be difficult to assume that the committing jury could not have found the requisite dangerousness, even under the narrowest "dangerousness" standard.

■ In light of the distinction allowing commitment procedures to be broader, the standard of old article 46.02, "his own welfare and protection or the protection of others," clearly withstands attack as an initial commitment standard, even if it could be construed unconstitutional as a continued confinement standard.

### IV.

### RELEASE

There is little to add to our discussion of the constitutionality of the "welfare and protection" standard in Part II of this opinion, except to note that the question is probably mooted by the new Texas legislation under which Petitioner's class will now be subject to release under Texas Mental Health Code articles 5547–80 through 5547–85. In any event, as we have already discussed in this opinion, we now find that the release standard of old article 46.02, "his own welfare and protection or the protection of others," is not unconstitutional for lack of due process in light of *O'Connor v. Donaldson*.

10. Respondent estimates that of the original 197 members of Petitioner's class at the time of our initial hearing, only 85 remain in mental health hospitals throughout the state.

### V.

### CONTINUATION OF THE INJUNCTION OF AUGUST 28, 1974

■ Petitioner urges this Court to continue its injunction of August 28, 1975, against the use of old article 46.-02's treatment and release provisions by the State of Texas. Petitioner fears that since his class is not provided for by the new statute, that the provisions of old article 46.02 will continue to be applied to it. Respondent argued that the State of Texas has already begun proceeding under the new statutes in treating and releasing the members of Petitioner's class.[10] Respondent, however, has offered no evidence to support its argument; and even though we agree that generally an order holding a statute unconstitutional should not be continued merely on unsubstantiated fears, Respondent admits that absolutely no harm can come of continuing the injunction. Therefore, even though we express the utmost faith in the State of Texas to proceed in good faith with its new legislation, we grant the continuation of our earlier injunction.

### VI.

Accordingly, we now find that the commitment and release standard of old article 46.02 of the Texas Code of Criminal Procedure, "his own welfare and protection or the protection of others," is constitutional and in response to legitimate state interests in light of *O'Connor v. Donaldson*. In view of the lack of evidence before this Court, we do not offer an opinion as to the constitutionality of the commitment standard as it was applied to the individual circumstances surrounding the separate commitments of each member of Petitioner's class.

Argument of Ms. Levatino, counsel for Respondent State of Texas, at oral argument on October 10, 1975.

We order continued our injunction of August 28, 1974, enjoining the State of Texas from treating or releasing any member of Petitioner's class under the provisions of old article 46.02 of the Texas Code of Criminal Procedure.

## APPENDIX I

### Portions of Tex.Code Crim.Proc. Art. 46.02 (Supp.1974)

### Trial of Insanity Issue in Advance of Trial on Merits

Sec. 1. The issue of present insanity shall be tried in advance of trial on the merits, upon written application on behalf of the accused. If upon trial of the issue of insanity in advance of trial on the merits, the accused is found to be presently sane, the trial judge shall dismiss the jury which decided the issue of present insanity and empanel a new jury to hear any subsequent trial on the merits.

### Procedure at Trial

Sec. 2. (a) At the trial on the merits, the trial court shall hear evidence on the issue of present insanity (1) if prior to the offer thereof there be filed on behalf of the defendant's written motion asking the court to hear evidence on such issue and requesting the court to declare a mistrial because of such insanity in the manner and to the extent provided for in this article; or (2) if the defendant or his counsel otherwise asks for a decision or issue thereon, in which event such act of the defendant shall be treated and considered as if the defendant had filed such a motion for mistrial. For purposes of present insanity, the defendant shall be considered presently insane if he is presently incompetent to make a rational defense.

(b) When the issue of present insanity is tried, the following rules shall apply:

(1) The issue of present insanity shall be submitted to the jury only if supported by competent testimony.

(2)(a) Instructions submitting the issue of present insanity shall be framed so as to require the jury to state in its verdict whether defendant is sane or insane at the time of the trial.

(b) If there has been competent medical or psychiatric testimony to the effect that the defendant is presently insane, instructions submitting the issue of present insanity shall require the jury, if it finds the defendant presently insane, to state whether the defendant requires hospitalization in a mental hospital for his own welfare and protection or the protection of others.

(3) The charge shall instruct the jury that if it finds defendant is presently insane it will not consider or deliberate upon any other issues except (a) whether the defendant should be committed to a mental hospital; and (b) whether he was sane or insane as of the time of the alleged offense, if such issue be submitted.

(c) When the issue of insanity as of the time of the alleged offense is tried, the following rules shall apply:

(1) The issue of insanity as of the time of the alleged offense shall be submitted to the jury only if supported by competent evidence tending to show that defendant was insane as of the time of the alleged offense.

(2) Instructions submitting the issue of insanity as of the time of the alleged offense shall be framed so as to require the jury to state in its verdict whether defendant was sane or insane as of the time of the alleged offense.

(3) If the jury finds the defendant to have been insane at the time the offense is alleged to have been committed, the defendant shall stand acquitted of the alleged offense.

(d) The following rules shall apply upon defendant's being acquitted by reason of the jury's returning a finding that he was insane as of the time of the alleged offense:

(1) If the jury finds the defendant to be insane at the time of trial, and if

the jury or the court further finds that the defendant should be committed to a mental institution, the court shall enter an order committing the defendant to Rusk State Hospital or to an agency of the United States operating a mental hospital or to a Veterans' Administration hospital, and placing him in the custody of the sheriff for transportation to the mental hospital to be confined therein until he becomes sane. The court shall further order that a transcript of all medical testimony adduced before the jury shall be forthwith prepared by the court reporter and such transcript shall accompany the patient to the mental hospital.

(2) If the jury returns a finding that defendant is sane as of the time of the trial, then the defendant shall be finally discharged.

(3) If there be no jury finding on the issue of present insanity, then the court, if the discharge or going at large of defendant be considered by the court manifestly dangerous to the peace and safety of the people, shall order defendant committed to jail or other suitable place pending the prompt initiation and prosecution by the attorney for the state or other person designated by the court of appropriate civil proceedings to determine whether defendant shall be committed to a mental institution, or the court may give defendant into the care of his friends on their giving satisfactory security for his proper care and protection; otherwise, defendant shall be discharged.

. . . . . .

(i) The head of the state mental hospital to which a person has been committed under the provisions of Sections 2(d) or 2(e) hereof may, with the permission of the committing court, transfer such person to any other state mental hospital or an agency of the United States operating a mental hospital or a Veterans' Administration hospital.

Status of Patient Acquited; Post-Commitment procedures

Sec. 3. (a) A person committed to a State Mental Hospital or to a mental hospital operated by the United States or the Veteran's Administration under this Article upon a jury finding of insanity at the time of trial who has been acquitted of an alleged offense because of insanity at the time the alleged offense was committed is not by reason of that offense a person charged with a criminal offense. The procedures set forth in this Section, and no others, shall apply to all post-commitment determinations of the sanity of a person committed to a mental hospital upon a jury finding of insanity at the time of trial who has been acquitted of an alleged offense because of insanity at the time the alleged offense was committed and thereby is not a person charged with a criminal offense.

(b) If the head of mental hospital to which a person has been committed upon a finding of insanity at the time of trial who has been acquitted of the alleged offense, is of the opinion that the person is sane, the head of the mental hospital shall so notify the court which committed the person to the mental hospital. Upon receiving such notice, the judge of the committing court shall within a reasonable length of time impanel a jury to determine whether the person is sane or insane. If the jury finds the person is sane, he shall be ordered released as soon as the judgment on the jury verdict becomes final. If the jury finds the person is insane, the judgment on the jury verdict shall order the person returned to the mental hospital until adjudged to be sane at a subsequent jury trial in the committing court. When the person is so ordered returned to the mental hospital, the head of the mental hospital shall not again notify the committing court that he is of the opinion the person is sane for at least 180 days from the date the judgment of the committing court ordering him returned to

the mental hospital on a previous jury finding of insanity has become final.

(c) When a person has been committed to a mental hospital upon a finding of insanity at the time of trial who has been acquitted of the alleged offense, and the person has been so committed for at least one year from the date of the original order so committing the person, and the head of the mental hospital to which he is committed fails or refuses to notify the court which committed the person to the mental hospital that he is of the opinion that the person is sane, then the person so committed may seek a post-commitment determination of his sanity by submitting a written request to the head of the mental hospital to which the person is committed requesting a determination of his sanity by the committing court.

Upon receipt of such a request, the head of the mental hospital shall, provided the person has been committed for at least one year from the date of the original order committing the person to the mental hospital, immediately cause the person to be examined by one or more staff physicians, and shall then immediately certify to the committing court the person's written request, the reports and findings of any examining physicians, and his own findings, if any.

Upon receipt from the head of the mental hospital of the person's written request and accompanying papers certified to the committing court, the judge of the committing court shall immediately cause the same to be filed with the clerk of the committing court and the judge shall examine such written request and accompanying papers to determine if they reflect probable merit. In the event the judge of the committing court does not believe that the written request and accompanying papers reflect probable merit, the judge shall enter an order denying the person's request, which order shall be appealable to determine whether there was an abuse of discretion in denying the person's request. The committing court may, at its discretion, appoint disinterested qualified experts to examine the person as to the person's mental condition and requirements for hospitalization, in a mental hospital, to report their findings to the committing court, and to testify thereto, and the committing court may, at its discretion, direct the hospital to forward to the court any hospital records pertaining to such person.

If the person's request, accompanying papers and other records or reports, reflect probable merit, the judge of the committing court shall within a reasonable length of time impanel a jury to determine whether the person is sane or insane. If the jury finds the person sane, he shall be ordered released as soon as the judgment on the jury verdict becomes final. If the jury finds the person is insane, the judgment of the jury verdict shall order the person returned to the mental hospital until adjudged to be sane at a subsequent jury trial in the committing court. When a person is so ordered returned to the mental hospital, the person shall not again be permitted to request a post-commitment determination of his sanity for at least one year from the date the judgment of the committing court ordering him returned to the mental hospital on a previous jury finding of insanity has become final.

### Commitment to State School for the Mentally Retarded

Sec. 11. If at any time a jury or a court finds a defendant to be insane and finds that he requires commitment to a mental hospital or mental institution, and if there has been competent testimony that such defendant is a mentally retarded person, then the court may, in its discretion, in lieu of committing him to a mental hospital or mental institution, commit him to a state school for the mentally retarded. If the crime of which the defendant was accused involved an act of physical violence against the person then such commitment shall be to a state school for the

mentally retarded designated by the Texas Department of Mental Health and Mental Retardation as having the capability to provide maximum security. In the event of a commitment to a state school for the mentally retarded, the head of the school shall have the same rights, powers, and duties as are conferred by this Article upon the heads of mental hospitals or mental institutions, and all the other provisions of this Article shall apply to the commitment. In this section, the term "mentally retarded person" means any person other than a mentally disordered person whose mental deficit requires him to have special training, education, supervision, treatment, care, or control.

## APPENDIX II
### Portions of Tex. Mental Health Code Art. 5547 (1958)

**Art. 5547–40. Prerequisite to Commitment**

No Petition for the indefinite commitment of a person to a mental hospital may be filed unless he has been under observation and/or treatment in a mental hospital for at least sixty (60) days pursuant to an Order of Temporary Hospitalization entered within the twelve (12) months immediately preceding the filing of the Petition.

**Art. 5547–42. Certificate Required**

The Petition shall be accompanied by a Certificate of Medical Examination for Mental Illness by a physician who has examined the proposed patient within the fifteen (15) days immediately preceding the filing of the Petition, stating the opinion of the examining physician that the proposed patient is mentally ill and requires hospitalization in a mental hospital.

**Art. 5547–43. Hearing Set; Attorney Appointed**

When a Petition and the required Certificate of Medical Examination for Mental Illness are filed, the county judge shall set a date for a hearing to be held within thirty (30) days of the filing of the Petition, and shall appoint an attorney ad litem to represent the proposed patient.

**Art. 5547–45. Waiver of Trial by Jury**

Waiver of trial by jury shall be in writing under oath and may be signed and filed at any time subsequent to service of the Petition and Notice of Hearing upon the proposed patient. The waiver of trial by jury shall be signed and sworn to by the proposed patient, or his next of kin, and by the attorney ad litem appointed to represent the proposed patient.

**Art. 5547–48. Trial by Jury**

The proposed patient shall not be denied the right to trial by jury. A jury shall determine the issues in the case if no waiver of jury trial is filed, or if jury trial is demanded by the proposed patient or his attorney at any time prior to the termination of the hearing, whether or not a waiver has been filed. The jury shall be summoned and impaneled in the same manner as in other civil cases in the county court.

**Art. 5547–50. Medical Testimony Required**

No person shall be indefinitely committed to a mental hospital except upon the basis of competent medical or psychiatric testimony.

**Art. 5547–51. Issues; Findings**

(a) The court or the jury, as the case may be, shall determine

(1) whether the proposed patient is mentally ill, and if so

(2) whether he requires hospitalization in a mental hospital for his own welfare and protection or the protection of others, and if so

(3) whether he is mentally incompetent.

**Art. 5547–52. Order Upon Hearing**

(a) If the court or the jury, as the case may be, finds that the proposed patient is not mentally ill or that he does not require hospitalization in a mental hospital for his own welfare and protection or the protection of others, the

court shall enter an order denying the Petition and discharging the proposed patient.

(b) If the court or the jury, as the case may be, finds that the proposed patient is mentally ill and requires hospitalization in a mental hospital for his own welfare and protection or the protection of others, the court shall order that the mentally ill person be commited as a patient to a mental hospital for an indefinite period.

Art. 5547–69. Persons Charged With Criminal Offense

The sections of this Code concerning the discharge, furlough and transfer of a patient are not applicable to a person charged with a criminal offense who is admitted in accordance with Acts, Forty-fifth Legislature, Regular Session, 1937, Chapter 466 (compiled as Article 932a, Code of Criminal Procedure (Vernon's 1948)).

Art. 5547–80. Discharge of Patients

(a) The head of a mental hospital may at any time discharge a patient if he determines after examination that the patient no longer requires hospitalization.

(b) The head of a mental hospital may at any time discharge a patient on furlough, and shall discharge a patient who has been on furlough status for a continuous period of eighteen (18) months.

(c) The head of a mental hospital may discharge a nonresident patient who has been absent without authority for a continuous period of thirty (30) days.

(d) Upon the discharge of a patient, the head of the mental hospital shall prepare a Certificate of Discharge stating the basis therefor. The Certificate of Discharge shall be filed with the committing court, if any, and a copy thereof delivered or mailed to the patient.

## APPENDIX III

Portions of Tex.Session Law Service, Tex.Laws 1975, Ch. 415

Art. 46.02. Incompetency to Stand Trial

### Incompetency to Stand Trial

Section 1. (a) A person is incompetent to stand trial if he does not have:

(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or

(2) a rational as well as factual understanding of the proceedings against him.

(b) A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.

### Raising the Issue of Incompetency to Stand Trial

Sec. 2. (a) The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial.

(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

### Examination of the Defendant

. . . . . .

### Incompetency Hearing

Sec. 4. (a) If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the

defendant's competency to stand trial. This determination shall be made by a jury that has not been selected to determine the guilt or innocence of the defendant.

(b) The defendant is entitled to counsel at the competency hearing. If the defendant is indigent and the court has not yet appointed counsel to represent the defendant, the court shall appoint counsel prior to the competency hearing.

(c) If the defendant is found competent to stand trial, the court shall dismiss the jury that decided the issue and may continue the trial on the merits before the court or with the jury selected for that purpose.

(d) If the issue of incompetency to stand trial is raised other than by written motion in advance of trial pursuant to Subsection (a) of Section 2 of this article and the court determines that there is evidence to support a finding of incompetency to stand trial, the court shall set the issue for determination immediately or at any time prior to the sentencing of the defendant. If the competency hearing is delayed until after a verdict on the guilt or innocence of the defendant is returned, the competency hearing shall be held as soon thereafter as reasonably possible, but a competency hearing may be held only if the verdict in the trial on the merits is "guilty." If the defendant is found incompetent to stand trial after the beginning of the trial on the merits, the court shall declare a mistrial in the trial on the merits. A subsequent trial and conviction of the defendant for the same offense is not barred and jeopardy does not attach by reason of a mistrial under this section.

(e) Instructions submitting the issue of incompetency to stand trial shall be framed to require the jury to state in its verdict:

(1) whether the defendant is incompetent to stand trial; and

(2) if found incompetent to stand trial, whether there is no substantial probability that the defendant will attain the competency to stand trial within the foreseeable future.

(f) If the jury is unable to agree on a unanimous verdict after a reasonable opportunity to deliberate, the court shall declare a mistrial of the incompetency hearing, discharge the jury, and impanel another jury to determine the incompetency of the defendant to stand trial.

### Incompetency Dispositions

Sec. 5. (a) When a defendant has been determined incompetent to stand trial, and unless it is determined there is no substantial probability that the defendant will attain competency to stand trial in the foreseeable future, the court shall enter an order committing the defendant to the maximum security unit of Rusk State Hospital, to the maximum security unit of any other facility designated by the Texas Department of Mental Health and Mental Retardation, to an agency of the United States operating a mental hospital, or to a Veterans Administration hospital for a period not to exceed 12 months and placing him in the custody of the sheriff for transportation to the facility to be confined therein for further examination and treatment toward the specific objective of attaining competency to stand trial. A transcript of all medical testimony received by the jury shall be forthwith prepared by the court reporter and shall accompany the patient to the facility.

(b) No person shall be committed to a mental health or mental retardation facility under this section except on competent medical or psychiatric testimony.

(c) The facility to which the defendant is committed shall develop an individual program of treatment and shall report on the defendant's progress towards achieving competency to the court at least every 90 days.

(d) Nothing in this section precludes the court from allowing the defendant to be released on bail if the court determines that the defendant can be ade-

quately treated on an outpatient basis for the purpose of attaining competency to stand trial.

(e) The head of a facility to which a person has been committed pursuant to Subsection (a) of this section shall promptly notify the committing court:

(1) when he is of the opinion that the defendant has attained competency to stand trial; or

(2) when he is of the opinion that there is no substantial probability that the defendant will attain the competency to stand trial in the foreseeable future; or

(3) 14 days prior to the expiration of 12 months following the date of the commitment order.

(f) On notification to the committing court under Subsection (e) of this section, the sheriff of the county in which the committing court is located shall forthwith transport the defendant to the committing court.

(g) When the head of a facility to which the defendant is committed discharges the defendant and the defendant is returned to court, a final report shall be filed with the court documenting the applicable reason therefor under Subsection (e) of this section, and the court shall furnish copies to the defense counsel and the prosecuting attorney. If the defendant has no counsel and the court determines that the defendant is indigent, the court shall appoint counsel to represent him. When the report is filed with the court, the court is authorized to make a determination based solely on the report with regard to the defendant's competency to stand trial, unless the prosecuting attorney or the defense counsel objects in writing or in open court to the findings of the report within 15 days from the time the report is served on the parties. In the event of objection, the issue shall be set for a hearing before the court or, on motion by the defendant, his counsel, the prosecuting attorney, or the court, the hearing shall be held before a jury. The hearing shall be held within 30 days following the date of objection unless continued for good cause.

(h) If the defendant is found competent to stand trial, criminal proceedings against him may be resumed. If the defendant is found incompetent to stand trial, the court shal proceed under Section 6 of this article or shall release the defendant. No defendant who has been committed to a facility under Subsection (a) of this section may be recommitted to a facility under that subsection in connection with the same offense.

(i) If the charges pending against a defendant are dismissed, the committing court shall send a copy of the order of dismissal to the head of the facility in which the defendant is held and the defendant shall then be discharged.

### Civil Commitment

Sec. 6. (a) If a defendant is found incompetent to stand trial and there is found no substantial probability that he will become competent in the foreseeable future, or if the defendant has been previously committed to a facility under Subsection (a) of Section 5 of this article and it appears to the court that the defendant requires observation or treatment in a mental health or mental retardation facility for his own welfare and protection or the protection of others, the court shall transfer the defendant to the appropriate court for civil commitment proceedings and may order the defendant detained in jail or other suitable place pending the prompt initiation and prosecution by the attorney for the state or other person designated by the court of appropriate civil proceedings to determine whether the defendant will be committed to a mental health or mental retardation facility, or the court may give the defendant into the care of a responsible person on satisfactory security being given for his proper care and protection; otherwise the defendant shall be discharged.

(b) A person committed to a mental health or mental retardation facility as a result of the proceedings initiated pur-

suant to Subsection (a) of this section shall be committed to the maximum security unit of Rusk State Hospital or the maximum security unit of any other facility designated by the Texas Department of Mental Health and Mental Retardation. Within 30 days following commitment, the person shall be transferred to a nonsecurity unit of a mental health or mental retardation facility designated by the Texas Department of Mental Health and Mental Retardation unless the person is determined to be manifestly dangerous by a review board with the Texas Department of Mental Health and Mental Retardation.

(c) A transcript of all medical testimony received in both the criminal proceedings and the civil commitment proceedings shall be prepared forthwith by the court reporters and shall accompany the patient to the mental health or mental retardation facility.

(d) The head of a mental health or mental retardation facility to which a person has been committed or transferred as a result of the proceedings initiated pursuant to Subsection (a) of this section and who has received written notice from a prosecuting attorney that criminal charges are pending against the person shall notify the prosecuting attorney in writing at least 14 days prior to the discharge of the person. A written report as to the competency of the person to stand trial shall accompany the notice.

(e) On written notice by the head of a mental health or mental retardation facility that in his opinion a person who has been civilly committed to that facility and against whom criminal charges are pending is competent to stand trial, or on good cause shown by the defendant, his counsel, or the prosecuting attorney, the court in which the criminal charges are pending may hold a hearing to determine the competency of the defendant to stand trial. The hearing shall be before a jury unless waived by agreement of the parties. The order setting the hearing shall order the defendant placed in the custody of the sheriff for transportation to the court. The court may appoint disinterested experts to examine the defendant in accordance with the provisions of Section 3 of this article. If the defendant is found to be competent to stand trial, the proceedings on the criminal charges may be continued. If the defendant is found incompetent to stand trial and is under an order of commitment to a mental health or mental retardation facility, the court shall order him placed in the custody of the sheriff for transportation to that facility.

Art. 4603. The Insanity Defense

Section 1. (a) The insanity defense provided in Section 8.01 of the Penal Code shall be submitted to the jury only if supported by competent evidence.

(b) When the insanity defense is submitted, the trier of facts shall determine and include in the verdict or judgment or both whether the defendant is guilty, not guilty, or not guilty by reason of insanity.

(c) A defendant who has been found not guilty by reason of insanity shall stand acquitted of the offense charged and may not be considered a person charged with a criminal offense.

### Raising the Insanity Defense

Sec. 2. (a) A defendant planning to offer evidence of the insanity defense shall file a notice of his intention to offer such evidence with the court and the prosecuting attorney:

(1) at least 10 days prior to the date the case is set for trial; or

(2) if the court sets a pretrial hearing before the 10-day period, the defendant shall give notice at the hearing; or

(3) if the defendant raises the issue of his incompetency to stand trial before the 10-day period, he shall at the same time file notice of his intention to offer evidence of the insanity defense.

(b) Unless notice is timely filed pursuant to Subsection (a) of this section, evidence on the insanity defense is not

admissible unless the court finds that good cause exists for failure to give notice.

### Examination of the Defendant

.    .    .    .    .    .

### Civil Commitment

Sec. 4. (a) If a defendant is found not guilty by reason of insanity in the trial of a criminal offense and it appears to the court that the defendant requires observation or treatment in a mental health or mental retardation facility for his own welfare and protection or the protection of others, the court shall transfer the defendant to the appropriate court for civil commitment proceedings and may order the defendant detained in jail or other suitable place pending the prompt initiation and prosecution by the attorney for the state or other person designated by the court of appropriate civil proceedings to determine whether the defendant shall be committed to a mental health or mental retardation facility, or the court may give the defendant into the care of a responsible person on satisfactory security being given for his proper care and protection; otherwise the defendant shall be discharged.

(b) A person committed to a mental health or mental retardation facility as a result of the proceedings initiated pursuant to Subsection (a) of this section shall be committed to the maximum security unit of Rusk State Hospital or the maximum security unit of any other facility designated by the Texas Department of Mental Health and Mental Retardation. Within 30 days following commitment, the person shall be transferred to a nonsecurity unit of a mental health or mental retardation facility designated by the Texas Department of Mental Health and Mental Retardation unless the person is determined to be manifestly dangerous by a review board within the Texas Department of Mental Health and Mental Retardation.

(c) A transcript of all medical testimony received in both the criminal proceedings and the civil commitment proceedings shall be prepared forthwith by the court reporters and shall accompany the patient to the mental health or mental retardation facility.

### APPENDIX IV

#### Portions of Tex.Session Law Service, Tex.Laws 1975, Ch. 416

Art. 5547–31. Application for Temporary Hospitalization.

A sworn Application of Temporary Hospitalization of a proposed patient may be filed with the county court of the county in which the proposed patient resides or is found. The Application may be made by any adult person, or by the county judge, and shall state upon information and belief that the proposed patient is not charged with a criminal offense or that he is charged with a criminal offense and has been transferred to the appropriate court for civil commitment proceedings pursuant to Section 6 of Article 46.02, Code of Criminal Procedure, that he is mentally ill, and that for his own welfare and protection or the protection of others he requires observation and/or treatment in a mental hospital.

Art. 5547–36. Hearing on the Application.

(a) The Judge may hold the hearing on an Application for Temporary Hospitalization at any suitable place within the county. The hearing should be held in a physical setting not likely to have a harmful effect on the mental condition of the proposed patient in the event he is present.

(b) The proposed patient is not required to be present at the hearing, but he shall not be denied the right to be present.

(c) The Court may exclude all persons not having a legitimate interest in the proceedings, provided the consent of the proposed patient first shall have been obtained.

(d) The hearing shall be conducted in as informal a manner as is consistent with orderly procedure.

(e) The hearing shall be before the Court without a jury, unless a jury is demanded by a person authorized to make such demand or by the proposed patient or by the Court. Provided, however, the hearing must be before a jury in the case of a proposed patient who is charged with a criminal offense.

Art. 5547–45. Waiver of Trial by Jury

Waiver of trial by jury shall be in writing under oath and may be signed and filed at any time subsequent to service of the Petition and Notice of Hearing upon the proposed patient. The waiver of trial by jury shall be signed and sworn to by the proposed patient, or his next of kin, and by the attorney ad litem appointed to represent the proposed patient. There shall be no waiver of trial by jury in the case of a proposed patient who is charged with a criminal offense.

Art. 5547–68. Admission and Detention

(a) The head of a mental hospital is authorized to admit and detain any patient in accordance with the following procedures provided in this Code:

(1) Voluntary Hospitalization

(2) Emergency Admission

(3) Temporary Hospitalization

(4) Indefinite Commitment

(b) Nothing in this Code prohibits the admission of voluntary patients to private mental hospitals in any lawful manner.

(c) This Code does not affect the admission to a State mental hospital of an alcoholic admitted in accordance with Acts 1951, Fifty-second Legislature, Chapter 398 (compiled as Texas Civil Statutes, Article 3196c (Vernon's 1952 Supplement) ) nor the admission of a person charged with a criminal offense admitted in accordance with Section 5 of Article 46.02, Code of Criminal Procedure.

Art. 5547–69. Persons Charged with Criminal Offense

The sections of this Code concerning the discharge, furlough and transfer of a patient are not applicable to a person charged with a criminal offense who is admitted in accordance with Section 5 of Article 46.02, Code of Criminal Procedure.