**Ex Parte Mary Fuller WEBB.**

**No. 16804.**

Court of Civil Appeals of Texas, San Antonio.

Aug. 31, 1981.

Rehearing Denied Oct. 7, 1981.

Ray Leach, Bexar County Legal Aid Ass'n, San Antonio, for appellant.

Bill White, Dist. Atty., Bernie Martinez, Asst. Crim. Dist. Atty., San Antonio, for appellee.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment by the district court denying appellant Mary Fuller Webb's application for writ of habeas corpus.

Appellant challenged the entry of an order for temporary hospitalization by the County Court at Law Six of Bexar County, Texas, committing appellant to the San Antonio State Hospital for a period not to exceed ninety (90) days pursuant to Tex. Rev.Civ.Stat.Ann. art. 5547–38(b) (Vernon 1980). Appellant alleged that the commitment order was void and without legal effect because the order was entered pursuant to a statute (1) unconstitutional on its face, and (2) unconstitutionally applied to her. In a bench trial the court found that the commitment order was entered in compliance with Article 5547–38(b), Vernon's Annotated Texas Civil Statutes, and that the order was valid on its face in accordance with all of the provisions of Articles 5547–1 to 5547–37, Vernon's Annotated Texas Civil Statutes. The court entered an order denying appellant's application for writ of habeas corpus.

In her points of error appellant asserts the same contentions she asserted in the court below, namely, that Article 5547–38(b) is (1) unconstitutional on its face because it is vague and overbroad, and (2) it was unconstitutionally applied to her.

It is appellant's position that if either of her two points are correct, then the commitment order issued by the County Court at Law Six of Bexar County, Texas, is void and subject to collateral attack by habeas corpus in the district court.

■ In support of her argument that the statute is vague and overbroad, appellant urges that the statute is unconstitutionally infirm because the statute incorporates an impermissible standard for involuntary commitment. Article 5547–38(b), provides:

If upon the hearing the court finds that the proposed patient is mentally ill and requires observation and/or treatment in a mental hospital *for his own welfare and*

*protection or the protection of others*, the court shall order that the mentally ill person be committed as a patient for observation and/or treatment in a mental hospital for a period not exceeding ninety (90) days. (Emphasis added).

Tex.Rev.Civ.Stat.Ann. art. 5547–38(b) (Vernon 1980). It is the phrase "for his own welfare and protection or the protection of others" that appellant maintains is an impermissible standard for involuntary commitment. We disagree. Both state and federal courts have determined that this very standard satisfies constitutional requirements.

Appellant relies on *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), where the United States Supreme Court held that a state cannot constitutionally confine a non-dangerous individual in a mental hospital if that non-dangerous individual is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends. However, in *Reynolds v. Sheldon*, 404 F.Supp. 1004 (N.D.Tex.1975), the federal district court examined the "for his own welfare and protection or the protection of others" commitment standard in light of the decision in *O'Connor* and held that the standard was constitutional. The decision in *Reynolds* affirmed a prior ruling which required that the individual be held to be a danger to himself or others. *Eidinoff v. Connolly*, 281 F.Supp. 191 (N.D.Tex.1968). Both cases were actually scrutinizing the commitment standard under the old Article 46.02, Texas Code of Criminal Procedure (1974). Nevertheless, that commitment standard is identical to the commitment standard under Article 5547–38(b). In *Reynolds*, the term "protection" as used in the context of Tex.Code Crim.Pro.Ann. art. 46.02 (Vernon 1974), was determined to be coextensive with the term "dangerous" as used by the court in *O'Connor*. 404 F.Supp. at 1009. Texas courts also have held that the phrase "for his own welfare and protection and the protection of others" incorporates a "dangerousness" standard. *See Lodge v. State*, 597 S.W.2d 773 (Tex.Civ.

App.—San Antonio 1980); *aff'd* 608 S.W.2d 910 (Tex.1980); *Powers v. State,* 556 S.W.2d 567 (1977); and *Moss v. State,* 539 S.W.2d 936 (Tex.Civ.App.—Dallas 1976, no writ). The Texas Supreme Court concluded in *State v. Turner,* 556 S.W.2d 563 (Tex.1977), that a patient confined under the Texas Mental Health Code is "entitled to treatment, to periodic and recurrent review of his mental condition, and to release at such time as he no longer presents a danger to himself or others." 556 S.W.2d at 566. It can therefore be concluded that if a patient must be released when he is no longer dangerous, he should not have been committed unless he was dangerous initially.

We hold that Article 5547–38(b) incorporates a "dangerousness" standard before a mentally ill person may be involuntarily committed, and, under the rules expressed in *O'Connor,* is not so overbroad as to violate due process.

Appellant argues that the phrase "for his own welfare and protection or the protection of others" in its given context is so imprecise and vague that its meaning cannot be understood. We disagree. The United States Supreme Court has approved commitment statutes that are broader and less comprehensible. *See Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In *Jackson,* the court approved a statute providing for commitment where the individual "requires care, treatment, training or detention in the interest of the welfare of such person or the welfare of others." 406 U.S. at 722, 92 S.Ct. at 1850. In *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), the court approved a statute permitting commitment where "a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community." 405 U.S. at 509 n.4, 92 S.Ct. at 1052 n.4. Based on these opinions and in view of the rule in *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), that courts should strive to construe a statute so as to uphold its constitutional validity, we hold that the commitment standard as set out in 5547–38(b) is not vague nor incapable of comprehension.

■■ In support of her argument that the order confining appellant is void because it was entered under authority of a statute which was applied to her in an unconstitutional manner, appellant challenges the legal and factual insufficiency of the evidence that there existed a substantial risk of serious and immediate harm to appellant or to others if appellant were not confined for treatment. Habeas corpus proceedings are collateral and not direct attacks on the proceedings under which the restraint complained of has been imposed, and the court is limited in such proceedings to the question of whether the commitment is void. *Doss v. Doss,* 521 S.W.2d 709, 711–712 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Ex Parte Cox,* 479 S.W.2d 110, 113 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). The appellant then may not complain of the factual insufficiency of the evidence to support the commitment in a habeas corpus hearing. When the question is properly raised, an examination of the evidence must be conducted to determine if there is *any* evidence to support an order of commitment or whether there has been a violation of a constitutional right. If there is a violation, then the order will be stricken down and the appellant discharged. Appellant emphasizes that there is no evidence of probative force to support the finding that a substantial risk of serious and immediate harm existed to appellant or to others if appellant were not confined for treatment.

■ A review of the record indicates that the district court found the following:

*Findings of Fact*

. . . .

3. The facts stated in the Agreed Fact Stipulation received in evidence during the trial of this cause, and marked 'PX–1' is hereby incorporated as the Court's Findings, as though fully set forth herein.

PX–1 is an original transcript of proceedings of the trial held by the County Court on the application for temporary hospitalization. We hold that there was evidence, *more than a scintilla,* upon which the judge could enter his order of commitment.

The doctor testified that the appellant had a paranoid disorder which required hospitalization for her own protection and welfare or the protection of others. The evidence showed that the appellant was found with a loaded gun in her car with the wrong caliber bullets which posed the danger of exploding. The evidence further showed that the appellant started a fire in her kitchen and later had no recollection of the fire. The judge considered this testimony and ruled accordingly. We overrule appellant's point of error that the order confining her was void.

Therefore, since the order for temporary hospitalization was entered in compliance with a valid statute, and in compliance with all the provisions of said statute, the order of the district court denying appellant's application for writ of habeas corpus is affirmed.