**Hazel JOHNSON as a Mentally Ill Person, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–84–00374–CV.**

Court of Appeals of Texas, San Antonio.

March 27, 1985.

Michael Robbins, San Antonio, for appellant.

Sam Millsap, Jr., Mary Esther Hernandez, District Attorney's Office, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

Hazel Johnson appeals from a judgment committing her to San Antonio State Hospital for observation and/or treatment for a period not to exceed ninety days, pursuant to TEX.REV.CIV.STAT.ANN. art. 5547–50 (Vernon Supp.1985).[1] Trial was by jury. The record before us consists of a transcript but not a statement of facts.[2] We affirm.

On July 18, 1984, Hazel G. Whiteside, daughter of appellant, presented an Application for the Temporary Hospitalization (§ 32) of her mother and supplied the following factual information:

U.S. Government is out to get her, going to neighbor's houses telling them they are helping Reagan to get her. Says people are taking pictures threw [sic] the television, packing house to move to San Francisco as soon as she gets 1,000,000 from Reagan. Says Reagan wants her to poise [sic] nude for his campaign. States her neighbors turned on water in kitchen, water standing in house.

\*   \*   \*   \*   \*   \*

My mother has a gun. She will not going [sic] very calmly. As long as you agree with her way she acts coherent. She will think the Government sent you to get her.

The trial court issued an Order to Submit to Medical Examination for Mental Illness that same day.

On July 20, 1984, the trial court placed appellant under protective custody at San Antonio State Hospital (§ 36) and ordered Bexar County Mental Health/Mental Retardation to furnish a written recommendation as to the most appropriate treatment alternative. § 34.

On July 23, 1984, the trial court held a probable cause hearing on appellant's pro-

tective custody. Prior to this hearing, two physicians examined appellant and filed their certificates. § 46(a). Dr. Helen Albanese, in her physician's certificate, diagnosed appellant as having a schizoaffective disorder. Additionally she wrote:

Angry at all times—unable to talk with us without verbal attacks. Grandiose—thinks she has special influences with Pres. Reagan. Unable to work now. No insight and doesn't want treatment. Has thrown things at staff without provocation.

\*   \*   \*   \*   \*   \*

Patient may hurt someone with physical attack. She is also unable to care for self in this state.

Dr. Byron Stone, in his physician's certificate, also diagnosed appellant as having a schizoaffective disorder, and noted:

Pt [sic] is extremely angry, hostile & uncooperative. She has recently shown poor judgement in quitting a job of 25 years and has paranoid and grandiose delusions regarding the President.

\*   \*   \*   \*   \*   \*

Pt [sic] is angry and uncooperative, has thrown books at the medical staff, appears physically threatening, and appears to be acting on paranoid & grandiose delusions about the president.

The court found that appellant presented a substantial risk of serious harm to herself or others such that she could not be at liberty pending final commitment hearing. § 38. *See Luna v. Van Zandt*, 554 F.Supp. 68 (S.D.Tex.1982) (probable cause hearing necessary within 72 hours of order of protective custody).

Upon a final hearing on August 1, 1984, the judge and jury determined appellant met the standards for involuntary care. § 50.

---

**1.** Hereinafter, all statutory references are to the Texas Mental Health Code. TEX.REV.CIV. STAT.ANN. art. 5547–1 et seq. (Vernon Supp. 1985).

**2.** The record discloses the statement of facts was due on August 31, 1984, but was not filed

until January 3, 1985. No motion to extend time for filing same was tendered to the court. Therefore this court ordered that the statement of facts not be considered in this appeal. TEX. R.CIV.P. 385(d); TEX.R.CIV.P. 21c.

Having heard the testimony of physicians Albanese and Stone, the jury was presented with the following special issues:

Question No. 1—*Based on clear and convincing evidence* is *HAZEL JOHNSON*, mentally ill?

Question No. 2—*Based on clear and convincing evidence* is *HAZEL JOHNSON*, likely to cause serious harm to *HER* self?

Question No. 3—*Based on clear and convincing evidence* is *HAZEL JOHNSON*, likely to cause serious harm to others?

Question No. 4—*Based on clear and convincing evidence* will *HAZEL JOHNSON*, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and continue to experience deterioration of his [sic] ability to funcition [sic] independently and be unable to make a rations; [sic] and informed decision as to whether or not to submit to treatment? [Emphasis ours.]

In answer to these special issues, the jury found (1) Hazel Johnson is mentally ill; (2) Hazel Johnson is likely to cause serious harm to herself; (3) Hazel Johnson is not likely to cause serious harm to others; (4) Hazel Johnson will, if not treated, be likely to cause serious harm to herself or to others.

### INVOLUNTARY COMMITMENT BY ALTERNATIVE MEANS

The Mental Health Code provides three alternative means by which an impaired person may be involuntarily committed:

(b) Upon the hearing, the judge or the jury, if one has been requested, shall determine that the person requires court-ordered mental health services only if it finds, on the basis of *clear and convincing evidence*, that:

(1) the person is mentally ill; *and*

(2) as a result of that mental illness the person:

(i) is *likely* to cause serious harm to himself; or

(ii) is *likely* to cause serious harm to others; or

(iii) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.

The three alternatives of § 50(b)(2) all require proof of a mental illness, defined as an illness, disease, or condition which either: (A) substantially impairs the person's thought, perception or reality, emotional process, or judgment; or (B) grossly impairs behavior as manifested by recent disturbed behavior. § 4(8).

Appellant brings two points of error, both of which challenge whether § 50(b)(2) comports with constitutional requirements of due process. In point of error one, appellant contends that the trial court violated due process requirements under the Fourteenth Amendment by applying an ambiguous standard of commitment in § 50(b)(2)(i) for two reasons: (1) the use of the term "likely" invokes the "preponderance of evidence" standard of proof which is a lesser standard of proof than the "clear and convincing standard" mandated by the statute as well as case law; (2) the statute should require that the harm to herself be imminent.

■ *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), *on remand*, 588 S.W.2d 569, 570 (Tex.1979), mandated that the standard for involuntary commitment in mental health cases must be the clear and convincing standard of proof. A careful reading of this statute indicates that the "clear and convincing" standard of proof is set out in the primary paragraph and the use of the term "likely" merely appears in subordinate paragraphs. Whereas "clear and convincing" is a specific legal term of art, "likely" is a commonly used adverb. The special issues in this case required the "clear and convincing" standard of proof to be applied.

■ It is also asserted that the statute is ambiguous in not requiring imminent harm,

but we find no ambiguity is involved. There may be an omission. However, the United States Supreme Court has declined to discuss whether imminent harm to self is a necessary element of proof before an involuntary commitment may be ordered. *See O'Conner v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). *Cf. Suzuki v. Yuen,* 617 F.2d 173, 178 (9th Cir.1980), stating imminent danger must be shown. In addition, there are no Texas decisions requiring imminent harm as a necessary element.

Moreover, in the absence of a statement of facts, we must presume that there was sufficient evidence to support the jury findings and the judgment. *Mays v. Pierce,* 154 Tex. 487, 281 S.W.2d 79, 82 (1955); *DeLeon v. Otis Elevator Co.,* 610 S.W.2d 179, 182 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). Further, we cannot say the jury did not find imminent harm. We find that § 50(b)(2)(i) is sufficiently clear to meet due process requirements. Point of error one is overruled.

## DANGEROUSNESS

The jury finding that appellant is dangerous to herself would alone suffice as the basis to commit her involuntarily. Nevertheless, in point of error two, appellant argues that the trial court violated her due process right to liberty under the Fourteenth Amendment by applying an overbroad standard of commitment in § 50(b)(2)(iii), *supra.*[3] Specifically, appellant objects that this third criterion for commitment would allow nondangerous impaired individuals to be involuntarily committed, which is specifically forbidden in *O'Connor, supra,* 422 U.S. at 576, 95 S.Ct. at 2494.

The 1957 Texas Mental Health Code provided for involuntary treatment upon a determination that an impaired person was "mentally ill and require[d] observation and/or treatment in a mental hospital for his own welfare and protection or the pro-

tection of others ..." *Ex parte Webb,* 625 S.W.2d 372, 373 (Tex.Civ.App.—San Antonio 1981, writ dism'd). Even though the language of that statute is far broader than that of the current statute, the San Antonio Court held that the language of the earlier statute incorporated a "dangerousness" standard that was precise enough to meet due process requirements. *Id.* at 374; Dix, *The 1983 Revision of the Texas Mental Health Code,* 16 ST. MARY'S L.J. 41, 55–61 (1984).

An individual who cannot make a rational decision to receive treatment poses a threat to his own well being. That person is a danger to himself precisely because the nature of his illness prevents him from seeking treatment which might improve his condition. Therefore, the state, under the *parens patriae* doctrine (the state should care for those individuals who cannot care for themselves) has a legitimate interest in involuntarily committing such an individual. We agree with this declaration in *Colyar v. Third Judicial District Court for Salt Lake County,* 469 F.Supp. 424, 430 (D.Utah 1979).

As in *Ex parte Webb, supra,* we find that a dangerousness standard, in keeping with due process requirements, is encompassed in this third criterion. We find that § 50(b)(2)(iii) is sufficiently narrow to satisfy due process requirements. *See Sawyer v. Sandstrom,* 615 F.2d 311, 315 (5th Cir.1980). Legislative enactments will not be found unconstitutional and invalid unless it is absolutely necessary to so hold. *Ex parte Ullmann,* 616 S.W.2d 278, 281 (Tex.Civ.App.—San Antonio 1981, writ dism'd). Point of error two is overruled.

Finding the challenged statute meets the due process requirements enunciated in *Addington v. Texas, supra,* and in *O'Connor, supra,* we affirm the judgment.

---

**3.** Special issue four tracked the provisions of § 50(b)(2)(iii). The jury answered affirmatively. Notwithstanding the affirmative answer to special issue two, this would be a sufficient basis for involuntary commitment.