100 S.W.3d 368 (2002)
In the Interest of C.E.
No. 04-02-00537-CV.
Court of Appeals of Texas, San Antonio.
December 11, 2002.
Frederick P. Garcia, Jr., Law Offices of Garcia & Uechi, San Antonio, for Appellant.
Susan D. Reed, Crim. Dist. Atty., Scott Roberts, Asst. Crim. Dist. Atty., San Antonio, for Appellee.
Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SARAH B. DUNCAN, Justice.

OPINION
Opinion by CATHERINE STONE, Justice.
In this accelerated appeal we are asked to determine whether clear and convincing *369 evidence supports appellant's court-ordered commitment to San Antonio State Hospital ("SASH").[1] On January 23, 2002, the court ordered C.E. be committed to SASH for inpatient care for a period not to exceed 90 days. On April 23, 2002, before C.E.'s commitment term had expired, the court ordered C.E. committed for a second 90 day period. On July 11, 2002, before C.E.'s second commitment term had expired, the State filed an application for a 90-day commitment extension.
After a hearing on the State's application, the trial court ordered C.E. committed for an additional 90 days. On appeal, C.E. challenges the legal and factual sufficiency of the evidence to support the trial court's finding that commitment was necessary. Because we hold the evidence insufficient to support involuntary hospitalization, we reverse the trial court's order.[2]

Involuntary Commitment
A trial court may not order temporary inpatient mental health services unless it finds from clear and convincing evidence that:
(1) the proposed patient is mentally ill; and
(2) as a result of that mental illness the proposed patient:
(A) is likely to cause serious harm to himself;
(B) is likely to cause serious harm to others; or
(C) is:
(i) suffering severe and abnormal mental, emotional, or physical distress;
(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.
Tex. Health & Safety Code Ann. § 574.034(a) (Vernon Supp.2002). To be clear and convincing, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of the proposed patient's ability to function. Id. at § 574.034(d)(1), (2). Expert opinion recommending involuntary temporary commitment must be supported by a factual basis. In re Breeden, 4 S.W.3d 782, 784 (Tex.App.-San Antonio 1999, no pet.). A bald diagnosis alone is insufficient to support commitment. Id. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the truth of the allegations sought to be established. *370 Id. The proof must be more than merely the greater weight of the credible evidence, but there is no requirement that the evidence be unequivocal or undisputed. Id. at 784-85.

Standards of Review
When we consider no evidence challenges, we review all the evidence in the light most favorable to the trial court's findings, indulging every reasonable inference in favor of those findings to determine whether more than a scintilla of evidence supports the challenged findings. Id. at 785. In the current context of the State's heightened burden of proof, we will sustain a no evidence challenge if the evidence is insufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the facts. Id. When we consider factual insufficiency challenges, we may set aside the findings only if a review of all the evidence demonstrates that the evidence which supports the findings is so weak as to be clearly wrong and manifestly unjust. Id. In light of these standards, we evaluate the evidence presented at the hearing for court-ordered mental health services.

Commitment Evidence
At the commitment hearing, Dr. Janet True, Devon Kinard, and C.E. testified. Dr. True, C.E.'s treating physician, testified C.E. is mentally ill. C.E. has vascular dementia, a behavioral disturbance, and delusions. His conditions substantially impair his thoughts, perception of reality, emotional process, and judgment. They cause C.E. to have difficulty grooming, learning, remembering, and planning. C.E.'s mental illness, however, does not make him a serious harm to himself or others.
Dr. True believes C.E. does not understand why he is at SASH. This causes C.E. physical and emotional distress. C.E.'s distress impairs his judgment, prevents him from keeping himself clean, and causes him to get stuck on things. According to Dr. True, C.E. does not have an ability to function independently.[3] Furthermore, because C.E. does not believe he has any medical problems, Dr. True believes C.E. does not have an ability to make a rational decision about whether or not to submit himself to treatment.
Although Dr. True admits C.E. could be cared for in a personal care home, she believes such a setting would be inappropriate for C.E. at this time. C.E. has run away from two or three nursing homes in the past and has indicated he would run away if placed in such an environment. Dr. True further stated C.E. needs a restrictive environment to keep him from returning to a girlfriend who steals from him. Moreover, C.E. needs to be cared for because he has no place to return toC.E.'s guardian has changed the locks on his residence.
Kinard, a student occupational therapy intern, testified C.E. needs assistance grooming, using the toilet, eating, and taking medications. Kinard's conclusions are based upon C.E.'s scores on a "routine task inventory test" given to C.E. to assess his ability to function. He further testified that, as recently as the Friday before trial, C.E. had not cleaned himself properlyhe had left visible stains in his pants. According to Kinard, C.E. cannot function independently outside the hospital.
*371 The third and final person to testify at the hearing was C.E. C.E. testified he does not believe he has a mental illness, although he concedes he needs a guardian. According to C.E., he takes his medication. He believes he could function on his own in a less restrictive environment. In fact, C.E. is employed at the "transition unit" of the hospital and makes $5.15 per hour. He often showers without assistance. C.E. admits he sometimes requires assistance showering at the hospital because he has a rash and cannot "reach into ... [his] private areas" as well as he can when he takes a bath. He further indicated he does not "really care about going to the bathroom" because he had $30 stolen from him in the past when he was showering. C.E. indicated he would not run away if placed in a personal care home.

Sufficiency of the Evidence
C.E. does not challenge the diagnosis of mental illness, but contends there was no or insufficient evidence of an overt act[4] or continuing pattern of behavior that confirmed his distress and deterioration of his ability to function independently.[5] Unless there is clear and convincing evidence of an overt act or continuing pattern of deterioration of C.E.'s ability to function independently, commitment was improper in this instance.
The record reveals no overt acts or continuing pattern of behavior demonstrating a deterioration of C.E.'s ability to function independently. The State's witnesses' testimony that C.E. cannot care for himself is without sufficient factual basis. The record reflects the witnesses testified to only one specific instance of C.E. not cleaning himself completely, despite having been in the hospital for almost 180 days. We do not believe that this lone instance of C.E. leaving "visible stains in his pants" rises to the level of a sufficient act or pattern of behavior that will support commitment. See Mezick v. State, 920 S.W.2d 427, 430-31 (Tex.App.-Houston [1st Dist.] 1996, no writ) (affirming commitment for manic-depressive patient who had completely stopped eating, lost thirty pounds, "steadfastly" refused all medications, and threatened suicide); L.S. v. State, 867 S.W.2d 838, 842-43 (Tex.App.-Austin 1993, no writ) (affirming commitment for patient because evidence showed that patient deliberately burned his fingers with cigarettes, gained 10 pounds in one day by drinking excessive water, left the psychiatric facility without authorization for six days, was attacked by another patient for being intrusive, habitually walked into traffic without looking, stuck batteries to the exposed roots of his teeth, and used his hands to clean himself after defecating, leaving feces smeared on his clothing). While the record arguably contains some evidence to meet the standard for temporary commitment, we hold the evidence is factually insufficient to meet the standard.

Conclusion
Although the medical testimony in this case might well have been valid, the Legislature has mandated that more than conclusory opinions by experts is required before a person may be involuntarily committed *372 for inpatient mental health services. Because the evidence adduced by the State at trial is insufficient to establish the elements of section 574.034 of the Health and Safety Code, we sustain C.E.'s second issue. We therefore reverse the judgment of the trial court and remand the cause to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Although C.E.'s commitment period expired on October 20, 2002, this appeal is not moot. See State v. Lodge, 608 S.W.2d 910, 911 (Tex.1980) (holding doctrine of mootness does not apply to appeals from involuntary commitments).
[2] On appeal, C.E. also contends the trial court erred by failing to serve his guardian with notice of the commitment hearing. See Tex. Health & Safety Code Ann. § 574.006(b) (Vernon Supp.2002). The State contends C.E.'s guardian waived his right to notice by filing a written waiver of his rights after the commitment hearing. For purposes of this appeal, we shall assume C.E.'s guardian properly waived his right to notice and limit our inquiry to the sufficiency of the evidence to support the trial court's ruling.
[3] Dr. True testified someone has always cared for C.E. Because C.E. is not self-sufficient, "he is prey for someone who wants to take advantage of him" and "he cannot do the things you need to do to take care of yourself."
[4] C.E. did not waive the required proof of an overt act. See Tex. Health & Safety Code Ann. § 574.034(d) (Vernon Supp.2002).
[5] The trial court's decision is based not on the fact that C.E. posed a harm to himself or others, but rather that C.E., if not treated, will continue to suffer severe and abnormal mental, emotional, or physical distress, and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. See Tex. Health & Safety Code Ann. § 574.034(a) (Vernon Supp.2002).