

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00217-CV

**THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF A.S.**, As a Mentally Ill Person

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2015-MH-0851
Honorable Kelly M. Cross,[1] Judge Presiding

Opinion by:      Rebeca C. Martinez, Justice

Sitting:         Karen Angelini, Justice
                 Rebeca C. Martinez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  September 9, 2015

AFFIRMED

A.S. appeals the probate court's order granting an application for temporary commitment for mental illness. A.S. challenges the legal and factual sufficiency of the evidence to support the probate court's order committing him for court-ordered temporary mental health services. We affirm the probate court's order.

### STANDARD OF REVIEW

The burden of proof for an involuntary commitment is by clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West Supp. 2014). Clear and convincing

---

[1] The Honorable Kelly M. Cross, presiding judge of Probate Court No. 1, Bexar County, Texas, signed the judgment; however, the Honorable Oscar Kazen, associate judge of Probate Court No. 1, Bexar County, Texas, presided over the commitment hearing.

evidence is "'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see also In re C.E.*, 100 S.W.3d 368, 369 (Tex. App.—San Antonio 2002, no pet.).

Because the burden of proof for an involuntary commitment is clear and convincing evidence, we apply a heightened standard of review. *State ex rel. D.W.*, 359 S.W.3d 383, 385 (Tex. App.—Dallas 2012, no pet.). When we consider a legal sufficiency challenge, "we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *K.E.W.*, 315 S.W.3d at 20. "We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so." *Id.* "When reviewing factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven." *State ex rel. D.W.*, 359 S.W.3d at 385 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

### STATUTORY REQUIREMENTS FOR TEMPORARY COMMITMENT

The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and
(2) as a result of that mental illness the proposed patient:
    (A) is likely to cause serious harm to himself;
    (B) is likely to cause serious harm to others; or
    (C) is:
        (i) suffering severe and abnormal mental, emotional, or physical distress;
        (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for

> the proposed patient's basic needs, including food, clothing, health, or safety; and
> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(1), (2) (West Supp. 2014). "If the judge or jury finds that the proposed patient meets the commitment criteria prescribed by Subsection (a), the judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision." *Id.* at § 574.034(c) (West Supp. 2014). "To be clear and convincing under Subsection (a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." *Id.* at § 574.034(d) (West Supp. 2014). Expert testimony recommending involuntary temporary commitment must be supported by a factual basis; "[a] bald diagnosis alone is insufficient to support commitment." *In re Breeden*, 4 S.W.3d 782, 784 (Tex. App.—San Antonio 1999, no pet.).

### COMMITMENT EVIDENCE

At the commitment hearing, Dr. Robert Jimenez, A.S.'s attending physician at the Nix Hospital psychiatric facility, testified that A.S. is bipolar, mixed, with psychotic features. A.S. was hospitalized after he ran out of his medications, which led to his decomposition. A.S. was brought in by police because he was "quite psychotic and manic, very disruptive, impulsive." According to police, he had a knife and was threatening to kill himself and others. A.S. had been hospitalized on previous occasions for mental health reasons. Since his current admission, A.S. has been very disruptive. He is delusional and believes that people are harming him or plan to harm him, and he claims he has special powers to defend himself. A.S. suffers from paranoid ideation and hallucinations and believes that people are saying things to hurt him. A.S. often gets

into verbal altercations with other patients and with staff. These altercations sometimes result in A.S. being moved to a "closed area" where he is closely watched by a staff member. A.S. was last moved to the "closed area" three days prior to the commitment hearing.

Dr. Jimenez agreed that A.S.'s illness substantially impairs his thoughts, perception of reality, emotional process, and judgment. Dr. Jimenez also felt that A.S. is likely to cause serious harm to others as a result of his mental illness. Dr. Jimenez explained that A.S. threatens to harm others, but does not follow through only because the staff is watching and immediately intervenes to calm A.S. and to de-escalate the situation. Dr. Jimenez agreed that A.S. is suffering severe and abnormal mental, emotional, or physical distress as a result of his mental illness. In addition, he is experiencing substantial mental or physical deterioration in his ability to function independently because his judgment is substantially impaired due to paranoia. "He is manic and has flightive ideas and he still has these moments of hostility, belligerence, and anger and they're easily brought out by rather benign things . . . often that have no relationship at all to him."

Dr. Jimenez also testified that A.S. is unable to provide for his own basic needs, and that the hospital staff has to make sure he bathes and brushes his teeth. In terms of safety, Dr. Jimenez stated that A.S. could, and has in the past, turn a safe situation into a dangerous situation. Dr. Jimenez explained that this was due to the fact that A.S. distorts reality and misinterprets things that are going on around him, particularly conversations with people. A.S. is able to make a rational and informed decision about whether to submit to treatment, but his ability to understand and accept his medications fluctuates daily. Dr. Jimenez opined that A.S. is in need of long-term care.

Dr. Jimenez last met with A.S. the day before the commitment hearing, and stated that A.S.'s violence and threats have been "decreasing of late." A.S. had been better about not cursing and threatening the staff, and even apologized to Dr. Jimenez for his behavior.

A.S. testified that he was brought to the hospital after failing to identify himself to police, and that he asked the police to bring him to the hospital. The knife in question was a Swiss Army knife attached to his key chain. A.S. stated that he was feeling much better now that he was back on his medications. He denied ever threatening to harm Dr. Jimenez or any of the hospital staff; at most, he said he was "going to press a lawsuit." He stated that he did not feel that anyone was planning on hurting him now that "the guy who was after" him had been dismissed from the hospital; A.S. claimed to have been assaulted ten times by this particular patient. He also stated that he had to go to the "closed area" because he became extremely upset after seeing a staff member who had molested him. A.S. stated that he is ready to voluntarily leave the hospital, and that he will live with his older brother and next door to his mother. He will take his medications because they help him to feel better and will follow up on outpatient treatment.

A.S.'s brother, P.S., testified that A.S. seems "normal" to him and is ready for discharge and able to follow up voluntarily with his treatment. P.S. stated that he would help his brother to get his medications and attend appointments. P.S. further stated that in the event his brother were to decompensate again, he would help him get back to the hospital. A.S.'s girlfriend also testified, and similarly stated that she would like A.S. to come home and that she will support him in outpatient treatment.

At the conclusion of the testimony, the probate court granted the State's application for temporary commitment. The probate court determined that A.S. is mentally ill, and that as a result of his mental illness, is likely to cause serious harm to himself; is suffering severe and abnormal mental, emotional, or physical distress; is experiencing substantial mental and physical deterioration of his ability to function independently; and is unable to make a rational and informed decision as to whether or not to submit to treatment. *See* TEX. HEALTH & SAFETY CODE ANN.

§ 574.034(a)(1),(2)(A),(C) (West Supp. 2014). The probate court noted that although A.S. is improving, his recent patterns of behavior indicate that he is not ready for discharge.

## ANALYSIS

On appeal, A.S. argues that there is not clear and convincing evidence that he meets the statutory criteria for temporary commitment. Specifically, he asserts there was no factual basis for Dr. Jimenez's conclusion that he was a risk of serious harm to others or that he suffered distress and experienced deterioration of his ability to function. A.S. argues that, to the contrary, Dr. Jimenez testified that he was improving. A.S. is correct in his assertion that expert diagnosis alone is insufficient to confine a patient for compulsory treatment, and the expert's opinion and recommendations must be supported by a showing of the factual basis on which they are grounded. *See In re Breeden*, 4 S.W.3d at 784. However, although the proof must be more than merely the greater weight of the credible evidence, there is no requirement the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570. There is also no requirement that the factual basis be direct evidence. *State ex rel. N.D.*, No. 04-14-00720-CV, 2015 WL 1004310, at *4 (Tex. App.— San Antonio Mar. 4, 2015, no pet.) (mem. op.); *Lopez v. State*, 775 S.W.2d 857, 859 (Tex. App.— San Antonio 1989, no writ).

The record reflects that A.S. was still suffering from paranoid ideations and hallucinations which caused him to believe others wished him harm. As little as three days before the commitment hearing, he was moved to a "closed area" for one-on-one observation after an altercation with nursing staff and patients that was precipitated by A.S.'s misunderstanding of what others were saying. Although A.S. disagreed with Dr. Jimenez's assertion that he threatened to harm the other patients and staff, the probate court was the sole judge of credibility. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Having reviewed the record as a whole, we conclude the foregoing evidence permitted the probate court to form a firm belief or conviction

that the findings necessary to support A.S.'s temporary commitment were proven or true. Accordingly, the evidence is legally and factually sufficient to support his temporary commitment, and we overrule A.S.'s issue on appeal.

## CONCLUSION

The probate court's order is affirmed.

Rebeca C. Martinez, Justice