

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00396-CV

David Gene **BECKA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR1257
Honorable Andrew Wyatt Carruthers, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Irene Rios, Justice
                Lori I. Valenzuela, Justice
                Velia J. Meza, Justice

Delivered and Filed: April 2, 2025

REVERSED AND RENDERED

Appellant David Gene Becka challenges the trial court's May 28, 2024 order committing him to court-ordered outpatient mental health services.[1] We reverse the trial court's order and render judgment releasing Becka from commitment to court-ordered outpatient mental health services.

---

[1] While the proceeding below arose from a criminal prosecution, "[i]nvoluntary mental health commitment proceedings are civil rather than criminal in nature." *Campbell v. State*, 85 S.W.3d 176, 180 (Tex. 2002) (internal quotation marks omitted).

## BACKGROUND

In 2019, a Bexar County grand jury indicted Becka for murder in connection with the 2018 shooting of Laval Thomas Jr. On July 20, 2021, the trial court signed an agreed judgment finding Becka was incompetent to stand trial for that offense. From December of 2021 until May of 2022, Becka underwent inpatient treatment at Terrell State Hospital in an effort to restore his competency. In May of 2022, a Bexar County jury found Becka remained incompetent to stand trial.

After his release from Terrell State Hospital, Becka—who was then 71 years old—resided in a senior living facility. He later moved into a duplex, where he lived alone with assistance from his family and home health care aides.

On October 4, 2022, the trial court signed an order committing Becka to outpatient mental health services. The court subsequently signed a modified order that again committed Becka to outpatient treatment but provided that the order's terms expired on October 4, 2023.

On October 26, 2023, the trial court signed a "hold order" requiring Becka to "remain in the custody of The Center for Health Care Services" until "[a] new Commitment Order is entered by this Court following a Recommitment Hearing[.]" That order provided that it would expire on December 1, 2023. However, in November of 2023, a Bexar County jury found Becka was competent to stand trial, and the trial court signed a judgment of competency.

In February of 2024, Becka suffered a stroke. The record shows that before his stroke, Becka voluntarily engaged in mental health treatment and was "compliant with [his] treatment plan."

On May 28, 2024, the trial court held "a renewal of extended commitment hearing." During the hearing, the trial court heard testimony from a board certified forensic psychiatrist, Dr.

Marshall Smith, who evaluated Becka both before and after his stroke. The trial court also admitted three documents into evidence: a Competency to Stand Trial Evaluation authored by Smith in March of 2024; a May 13, 2024 Physician's Certification of Medical Examination for Mental Illness, also authored by Smith; and a Certificate of Medical Examination for Mental Illness that was written by a second psychiatrist, Dr. David Hager, on April 25, 2024. In both his oral testimony and his written certificate, Smith opined that Becka did not satisfy the Texas Health and Safety Code's statutory criteria for court-ordered outpatient mental health treatment. Hager expressed the same opinion in his certificate.

At the conclusion of the hearing, the trial court signed an "Art. 46B Order for Extended Outpatient Mental Health Services," which: (1) found Becka was incompetent to stand trial; and (2) committed him to court-ordered outpatient mental health services "under Section 574.0355 [of the] Texas Health and Safety Code."[2] Becka timely filed this appeal.

## ANALYSIS

In his first issue on appeal, Becka argues the trial court's order committing him to court-ordered outpatient mental services is not supported by legally sufficient evidence.

### *Standard of Review and Applicable Law*

Under Chapter 574 of the Texas Health and Safety Code, a trial court "may order a proposed patient to receive court-ordered extended outpatient mental health services only if" the trial court or a jury finds from clear and convincing evidence that:

(A) the proposed patient is a person with severe and persistent mental illness;

---

[2] Article 46B of the Texas Code of Criminal Procedure provides that "[i]f it appears to the court that the defendant may be a person with mental illness, the court shall hold a hearing to determine whether the defendant should be court-ordered to mental health services under Subtitle C, Title 7" of the Texas Health and Safety Code. *See* TEX. CODE CRIM. PROC. art. 46B.102(a). Section 574.0355, which the trial court relied on here, is contained in the applicable portion of the Health and Safety Code.

(B) as a result of the mental illness, the proposed patient will, if not treated, experience deterioration of the ability to function independently to the extent that the proposed patient will be unable to live safely in the community without court-ordered outpatient mental health services;

(C) outpatient mental health services are needed to prevent a relapse that would likely result in serious harm to the proposed patient or others;

(D) the proposed patient has an inability to participate in outpatient treatment services effectively and voluntarily, demonstrated by: (i) any of the proposed patient's actions occurring within the two-year period that immediately precedes the hearing; or (ii) specific characteristics of the proposed patient's clinical condition that significantly impair the proposed patient's ability to make a rational and informed decision whether to submit to voluntary outpatient treatment;

(E) the proposed patient's condition is expected to continue for more than 90 days; and

(F) the proposed patient has received: (i) court-ordered inpatient mental health services [under Chapter 574 of the Texas Health and Safety Code or Chapter 46B of the Texas Code of Criminal Procedure] for a total of at least 60 days during the preceding 12 months; or (ii) court-ordered outpatient mental health services [under Chapter 574 of the Texas Health and Safety Code or Chapter 46B of the Texas Code of Criminal Procedure] during the preceding 60 days.

TEX. HEALTH & SAFETY CODE § 574.0355(a)(2). Our analysis in this case is limited to whether the evidence is legally sufficient to support the trial court's findings under subsections (B), (C), and (D).

"An order for civil commitment [under Chapter 574] must be supported by clear and convincing evidence." *Davis v. State*, No. 09-14-00044-CV, 2014 WL 4755486, at *2 (Tex. App.—Beaumont Sept. 25, 2014, no pet.) (mem. op.). "To be clear and convincing under Subsection (a)(2) [of section 574.0355], the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the deterioration of the ability to function independently to the extent that the proposed patient will be unable to live safely in the community; (2) the need for outpatient mental health services to prevent a relapse that would likely result in serious harm to the proposed patient or others; and (3) the proposed

patient's inability to participate in outpatient treatment services effectively and voluntarily." TEX. HEALTH & SAFETY CODE § 574.0355(c). If the court fails to find "from clear and convincing evidence" that the proposed patient meets the statutory criteria for court-ordered mental health services, it "shall enter an order denying an application for court-ordered temporary or extended mental health services[.]" TEX. HEALTH & SAFETY CODE § 574.033(a).

In construing the statutory requirements of Chapter 574, we must give effect to the legislature's intent as expressed by the statute's plain language. *See In re Evans*, 130 S.W.3d 472, 478 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding). In reviewing Becka's legal sufficiency challenge, we consider the evidence "in the light most favorable to the trial court's findings, indulging every reasonable inference in favor of those findings to determine whether more than a scintilla of evidence supports the challenged findings." *In re C.E.*, 100 S.W.3d 368, 370 (Tex. App.—San Antonio 2002, no pet.). "In the current context of the State's heightened [clear and convincing] burden of proof, we will sustain a no evidence challenge if the evidence is insufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the facts." *Id.*

### *Application*

Smith, the only witness who testified during the hearing, told the trial court that he evaluated Becka in October of 2023, December of 2023, March of 2024, and May of 2024. He testified that as of the May 2024 examination, Becka suffered from vascular neurocognitive disorder, post-traumatic stress disorder, major depressive disorder, and alcohol abuse disorder in remission. Smith did not testify, however, that any specific characteristics of Becka's condition, either before or after his stroke, "significantly impair[ed] [his] ability to make a rational and informed decision whether to submit to voluntary outpatient treatment." TEX. HEALTH & SAFETY

CODE § 574.0355(a)(2)(D)(ii). Nor did he identify any "recent overt act or a continuing pattern of behavior that tends to confirm . . . [Becka's] inability to participate in outpatient treatment services effectively and voluntarily." *Id.* § 574.0355(c)(3). To the contrary, he testified:

> Mr. Becka has been receiving voluntary treatment from his psychiatrist. His family brings him to his appointments. He's been compliant with the treatment plan. And so with the continued assistance of his family and the home health folks . . . there's nothing that makes me concerned that he can't continue to receive treatment voluntarily in the community like he's been doing over the past two to three years.

Smith also testified, "I think he can do [treatment] voluntarily. I don't think he requires a court order."

Smith further testified that Becka had not expressed any suicidal or homicidal ideation and had not "been involved in any type of aggression or any type of altercation or anything like that with anybody else[.]" Based on those facts, Smith concluded Becka "was not a threat or a harm to himself or others." Smith reached this conclusion even though he knew Becka was charged with murder. *See Rodriquez v. State*, 525 S.W.3d 734, 741–42 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding, in case involving appellant found not guilty of capital murder by reason of insanity, that evidence was legally insufficient to support inpatient commitment because "[n]ot a single expert testified that appellant is aggressive, either verbally or physically"). Smith did not offer any testimony that tended to show Becka required court-ordered mental health treatment "to prevent a relapse that would likely result in serious harm to" himself or others. *See* TEX. HEALTH & SAFETY CODE § 574.0355(a)(2)(C), (c)(2).

Finally, Smith testified that at the time of the hearing, Becka "was still living at home independently" and "was still able to live in a house by himself." Smith recognized that Becka required assistance from his family and home health aides, and he testified that Becka's condition would deteriorate without treatment for his mental health and neurocognitive issues. As noted

above, however, he unequivocally testified that he did not believe Becka required court-ordered mental health treatment. *See id.* § 574.0355(a)(2)(B). Additionally, while Smith testified that the amount of time Becka spent alone in his home "seem[ed] a little concerning" in light of his cognitive and memory impairment, he also explained that Becka was "not doing unsafe things. He's not leaving the house or roaming around or leaving the stove on or things of that nature. So it seems like he's able to function in an independent environment with the assistance of others." *See In re C.E.*, 100 S.W.3d at 371 (holding evidence did not support finding of "overt acts or continuing pattern of behavior demonstrating a deterioration of [proposed patient's] ability to function independently").

With regard to the exhibits admitted during the May 28 hearing, Smith's competency report expressly noted that it "address[ed] only issues concerning trial competency." The report did not discuss Becka's mental health or otherwise address the factors listed in section 574.0355. It therefore did not support a finding that Becka's condition satisfied the statute's requirements. *See* TEX. HEALTH & SAFETY CODE § 574.0355(a) (trial court may order extended outpatient mental health services "only if" clear and convincing evidence supports findings required by section 574.0355). While Smith's Physician's Certification of Medical Examination for Mental Illness addressed the section 574.0355 factors, that document explicitly concluded that Becka "**DOES NOT** meet criteria for Court-Ordered Mental Health Services" (emphasis in original). It also contained notes explaining why Smith reached that conclusion, and those notes were consistent with Smith's testimony.

Hager's Physician's Certificate of Medical Examination for Mental Illness also concluded that Becka "**DOES NOT** meet criteria for Court-Ordered Mental Health Services" (emphasis in original). As support for this conclusion, Hager explained that Becka "has demonstrated no

dangerous thinking patterns or behaviors for several years now," and he noted that Becka and his family had "been fully cooperative with substantial and ongoing legal and clinical requirements[.]" While Hager recognized that Becka did not "recall what [his psychiatric medications] are due to cognitive decline" and required "substantial in-home care/support," he also explained that Becka's family, pharmacy, and in-home caregivers manage his medications and that Becka had not refused to take his medication.

In short, the record shows that both physicians who provided expert evidence agreed Becka did not satisfy the statutory criteria for court-ordered mental health treatment. Nevertheless, the State argues the evidence presented below supported the trial court's order. The State contends, for example, that the neurocognitive issues caused by Becka's stroke "hinder[] him from understanding what his psychiatric diagnosis is and that he should be receiving or seeking out certain treatment[.]" Relying on *Johnson v. State*, 693 S.W.2d 559, 563 (Tex. App.—San Antonio 1985, no writ), the State reasons the evidence showed Becka's condition "poses a threat to his own well-being."

In *Johnson*, we wrote, "An individual who cannot make a rational decision to receive treatment poses a threat to his own well being. That person is a danger to himself precisely because the nature of his illness prevents him from seeking treatment which might improve his condition." *Id.* In that case, two physicians submitted certificates explaining that the proposed patient's schizoaffective disorder rendered her "unable to care for [her]self." *Id.* at 561. The proposed patient had "paranoid and grandiose delusions," threw objects at medical staff, was "unable to talk with [medical staff] without verbal attacks," did not want to submit to treatment, and was "extremely angry, hostile, [and] uncooperative." *Id.* Here, in contrast, the trial court did not hear evidence of any specific characteristics of Becka's condition that significantly impaired his ability

to make a rational and informed decision to voluntarily submit to treatment. *See* TEX. HEALTH & SAFETY CODE § 574.0355(a)(2)(D), (c)(3).[3] Smith testified that Becka "was doing fine from a mental health standpoint" until his stroke and that his "mental health conditions are stable and were being controlled and managed with the medication management that his psychiatrist had him on." Furthermore, in his written certification, Smith noted that Becka "said he needed his medications and that his medications help him." Because *Johnson* is factually distinguishable from this case, it does not support the trial court's order.

The State also notes that Smith testified it might be "beneficial" for Becka to undergo a court-ordered competency restoration program because "it would give additional data as to whether he's going to improve or not based on his cognitive impairment that he has currently." However, the State cites no authority that permitted the trial court to order Becka to submit to mental health treatment based solely on evidence that such treatment may be beneficial for him, and we have found none. We note, moreover, that Hager's certification explained that the cognitive impairment caused by Becka's stroke "is statutorily excluded from a definition of mental illness" that would support commitment to court-ordered outpatient mental health treatment. *See id.* § 571.003(14) (defining "mental illness" as excluding, inter alia, dementia and intellectual disability); *see also id.* § 574.0355(a)(2)(B) (trial court may not order mental health services unless it finds from clear and convincing evidence that proposed patient's ability to function independently will deteriorate "as a result of the [patient's] mental illness").

Finally, the State contends that Smith agreed Becka's family "had recently encouraged the treatment physician not to do further neuropsych testing, as they were relying on the court to order

---

[3] While section 574.0355 allows a trial court to find that "the proposed patient's actions occurring within the two-year period that immediately precedes the hearing" show the proposed patient is unable to effectively and voluntarily participate in mental health treatment, *see* TEX. HEALTH & SAFETY CODE § 574.0355(a)(2)(D)(i), the order in this case shows the trial court did not make such a finding here.

it." However, the record contains no evidence to support a finding that the testing was necessary to prevent either a deterioration in Becka's ability to function independently or a relapse that would likely result in harm to Becka or others. *See id.* § 574.0355(a)(2)(B), (C). The State also has not identified any evidence showing that the family's purported actions constituted a specific characteristic of Becka's condition that significantly impaired his ability to voluntarily submit to treatment. *Id.* § 574.0355(a)(2)(D)(ii).

For these reasons, we sustain Becka's first issue. Because our resolution of this question is dispositive, we need not consider Becka's remaining arguments. TEX. R. APP. P. 47.1.

## CONCLUSION

Even when viewed in the light most favorable to the trial court's findings, "the evidence is insufficient to produce in the mind of the fact finder a firm belief or conviction" that Becka's condition at the time of the May 28, 2024 hearing satisfied the statutory criteria necessary to commit him to court-ordered outpatient mental health services. *In re C.E.*, 100 S.W.3d at 370; *see generally* TEX. HEALTH & SAFETY CODE § 574.0355. Because the trial court's order therefore is not supported by legally sufficient evidence, we reverse the order and render judgment releasing Becka from commitment to court-ordered outpatient mental health services. *See* TEX. HEALTH & SAFETY CODE § 574.033.

Lori I. Valenzuela, Justice